No. 68,293

State of Kansas, *Appellant*, v. Robert C. Donlay, *Appellee*.

(853 P.2d 680)

Opinion
filed May 28, 1993.

*Kevin C. Fletcher,* assistant county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellant.

*Benjamin C. Wood,* special assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the brief for appellee.

The opinion of the court was delivered by

Abbott, J.: This is a direct appeal by the State from an order dismissing the complaint (K.S.A. 22-3602[b][1]).

Robert C. Donlay was charged with aggravated false impersonation under K.S.A. 21-3825 (class E felony). Donlay showed another individual's driver's license and signed that person's name

to the tickets he received when a state trooper stopped Donlay for speeding and for a seat belt violation. The trial court dismissed the charge, reasoning that Donlay should have been charged with the more specific crime of unlawful use of a driver's license, K.S.A. 8-260(a)(3) (class B misdemeanor).

Based upon the driver's license produced and the signature on the tickets, the trooper believed he had issued tickets to Matthew J. Jacobs. The two tickets were filed in Reno County District Court. Jacobs did not appear on the appearance date, and the trial court entered a plea of not guilty on behalf of Jacobs. Trial was set for a specific time and a notice to appear was sent to Matthew J. Jacobs.

Jacobs contacted the prosecutor, obtained the ticketed car's license number, produced alibi evidence, and told the prosecutor the tickets actually belonged to Donlay. The State dismissed the charges against Jacobs.

The State then filed a complaint against the true driver, Donlay, for aggravated false impersonation, contrary to K.S.A. 21-3825. At the preliminary hearing, the trooper testified Donlay had not represented himself as Jacobs at any time after he handed Donlay the citation.

The trial court ruled it was inappropriate to charge Donlay under K.S.A. 21-3825 because a more specific statute, K.S.A. 8-260, is available that deals with the particular action. The trial court reasoned Donlay should have been charged under K.S.A. 8-260(a)(3), which states in pertinent part:

"(a) It shall be unlawful for any person, for any purpose, to:

. . . .

"(3) Display or represent as the person's own, any driver's license not issued to the person."

Consequently, the trial court dismissed the aggravated false impersonation charge. Rather than file a misdemeanor charge under K.S.A. 8-260(a)(3), the State appealed.

Two issues are briefed: whether Donlay could be charged with a violation of either or both K.S.A. 21-3825(d) and K.S.A. 8-260(a)(3) and whether K.S.A. 21-3825(d) is applicable under the facts of this case.

The second issue was not considered or raised in the trial court. However, " '[i]nterpretation of statutes is a question of law.' "

*Todd v. Kelly,* 251 Kan. 512, 515, 837 P.2d 381 (1992). "When determining a question of law, this court is not bound by the decision of the district court." *Memorial Hospital Ass'n, Inc. v. Knutson,* 239 Kan. 663, 668, 722 P.2d 1093 (1986). In addition, "[t]he judgment of a trial court, if correct, is to be upheld, even though the court may have relied upon a wrong ground or assigned an erroneous reason for its decision." *State v. Wilburn,* 249 Kan. 678, 686, 822 P.2d 609 (1991).

A majority of this court finds the language in K.S.A. 21-3825(d) dispositive of this appeal. That statute provides in pertinent part:

"Aggravated false impersonation is falsely representing or impersonating another and in such falsely assumed character:

. . . .

"(d) Doing any other act *in the course of a . . . prosecution* whereby the person who is represented or impersonated may be made liable to the payment of any . . . costs . . ., or his rights may be in any manner affected." (Emphasis added.)

The question then becomes when does "in the course of a prosecution" commence? Is it when a crime is committed and an investigation begins, or is it when charges are filed with a court of competent jurisdiction? In this case, an argument can be made that it is somewhere in between, *i.e.,* when the ticket was issued based upon exhibiting someone else's driver's license and upon signing the ticket with the other person's name.

The general rule is that a criminal statute must be strictly construed in favor of the accused, which simply means that words are given their ordinary meaning. Any reasonable doubt about the meaning is decided in favor of anyone subjected to the criminal statute. *State v. Flummerfelt,* 235 Kan. 609, 612, 684 P.2d 363 (1984).

K.S.A. 21-3825(d) prohibits "[d]oing any other act in the course of a *suit, proceeding* or *prosecution."* (Emphasis added.)

A "suit" is a proceeding in a court for the enforcement of a right. It would not include the investigatory phase in preparing to file a suit. See *United States v. Safeway Stores,* 140 F.2d 834, 838 (10th Cir. 1944); *Dobbins et al. v. First Nat. Bank,* 112 Ill. 553, 566 (1884); *Drake v. Gilmore et al.,* 52 N.Y. 389, 394-95 (1873).

Additionally, Black's Law Dictionary 1434 (6th ed. 1990) defines "suit" as:

"A generic term, of comprehensive signification, referring to any proceeding by one person or persons against another or others in a court of law in which the plaintiff pursues, in such court, the remedy which the law affords him for the redress of an injury or the enforcement of a right, whether at law or in equity. [Citations omitted.] It is, however, seldom applied to a criminal prosecution."

Black's Law Dictionary 1204 (6th ed. 1990) also defines "proceeding":

"In a general sense, the form and manner of conducting juridical business before a court or judicial officer. Regular and orderly progress in form of law, including all possible steps in an action from its commencement to the execution of judgment. Term also refers to administrative proceedings before agencies, tribunals, bureaus, or the like.

"An act which is done by the authority or direction of the court, agency, or tribunal, express or implied; an act necessary to be done in order to obtain a given end; a prescribed mode of action for carrying into effect a legal right. All the steps or measures adopted in the prosecution or defense of an action. Statter v. United States, C.C.A. Alaska, 66 F.2d 819, 822. The word may be used synonymously with 'action' or 'suit' to describe the entire course of an action at law or suit in equity from the issuance of the writ or filing of the complaint until the entry of a final judgment, or may be used to describe any act done by authority of a court of law and every step required to be taken in any cause by either party. The proceedings of a suit embrace *all* matters that occur in its progress judicially."

A "proceeding" is the attempted enforcement of a right or law in a prescribed manner and requires commencement of the action. *Matter of Schorer,* 154 Misc. 198, 200, 277 N.Y.S. 677 (1935). Mere preparation is not a "proceeding."

The legislature has made the crime of aggravated false impersonation apply to acts in the course of a suit or in the course of a proceeding, which requires that a civil action be filed or a proceeding be commenced. If that is a given, would the legislature intend something different for "in the course of a prosecution"?

Black's Law Dictionary 1221 (6th ed. 1990) defines "prosecution" as:

"A criminal action; a proceeding instituted and carried on by due course of law, before a competent tribunal, for the purpose of determining the guilt or innocence of a person charged with crime. U.S. v. Reisinger, 128

U.S. 398, 9 S. Ct. 99, 32 L. Ed. 480. The continuous following up, through instrumentalities created by law, of a person accused of a public offense with a steady and fixed purpose of reaching a judicial determination of the guilt or innocence of the accused.

. . . .

"The term is also used respecting civil litigation, and includes every step in action, from its commencement to its final determination. The Brazil, C.C.A. Ill., 134 F.2d 929, 930."

In 1905, this court considered the term "prosecute" and, with approval, set forth:

"In the American and English Encyclopedia of Law (2d ed.), volume 23, page 268, there is a fair statement of what is included in the term 'prosecute.'

" 'To prosecute is to proceed against judicially. A prosecution is the act of conducting or waging a proceeding in court; the means adopted to bring a supposed offender to justice and punishment by due course of law. It is also defined as the institution or commencement and continuance of a criminal suit; the process of exhibiting formal charges against an offender before a legal tribunal, and pursuing them to final judgment on behalf of the state or government, as by indictment or information.' " *State v. Bowles,* 70 Kan. 821, 827, 79 Pac. 726 (1905).

In the context of the Sixth Amendment right to counsel, this court, in *State v. Bristor,* 236 Kan. 313, 320-22, 691 P.2d 1 (1984), stated:

"The Supreme Court has not defined precisely when a prosecution begins. The plurality in *Kirby* [*v. Illinois,* 406 U.S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877 (1972)] indicated that adversary judicial criminal proceedings are initiated by way of 'formal charge, preliminary hearing, indictment, information, or arraignment.' 406 U.S. at 689. In *Brewer v. Williams,* 430 U.S. 387, 51 L. Ed. 2d 424, 97 S. Ct. 1232, *reh. denied* 431 U.S. 925 (1977), the court found a criminal prosecution had begun when an arrest warrant had been issued, the accused had been arraigned on that warrant before a judge, and the accused had been committed by the court to confinement in jail. 430 U.S. at 399. However, *Brewer* did not answer when a criminal prosecution begins, because the court did not say whether one of these factors would have been sufficient or whether the combination of several or all of them triggered the right to counsel. Relying on *Kirby,* an Indiana court found that a driver had no right to consult with an attorney before deciding whether to take a breathalyzer test because the Sixth Amendment right to counsel did not attach 'until a judicial adversary proceeding had been initiated against him, that is, after the filing of an affidavit or indictment charging him with a crime.' *Davis v. State,* 174 Ind. App. 433, 435-36, 367 N.E.2d 1163 (1977). Accord *State ex rel. Webb v. City Court of City of Tucson,* 25 Ariz. App. 214, 542 P.2d 407 (1975); *State v. Petkus,* 110 N.H. 394, 269 A.2d 123 (1970), *cert. denied* 402 U.S. 932 (1971); *Flynt v. State,*

507 P.2d 586 (Okla. Crim. 1973); *State v. Newton*, 291 Or. 788, 636 P.2d 393 (1981).

. . . .

"In this case, there is some discrepancy between the Court of Appeals majority and dissent as to whether a complaint had been filed against Bristor when the BAT was administered. The majority found the issuance of a ticket the equivalent of a complaint. 9 Kan. App. 2d at 406. The dissent, relying on K.S.A. 8-2108, found a ticket does not become a complaint until it is filed with the court. 9 Kan. App. 2d at 420. K.S.A. 8-2108 provides, '. . . such citation [the ticket] when filed with a court having jurisdiction shall be deemed to be a lawful complaint for the purpose of prosecution.' Under this statute, Bristor's ticket did not become a complaint until it was filed with the court three days after his arrest.

"It is not until after the test has been administered that the State commits itself to the criminal prosecution."

K.S.A. 8-2108, part of the Kansas Uniform Act Regulating Traffic; Arrests, Citations, Penalties, provides:

"In the event the form of citation provided for in K.S.A. 8-2106 and amendments thereto includes information required by law and is signed by the officer preparing it, such citation when filed with a court having jurisdiction shall be deemed to be a lawful complaint for the purpose of prosecution for the violation specified."

We see nothing inconsistent between K.S.A. 8-2108 and K.S.A. 1992 Supp. 22-2202(8), which defines a complaint and provides that a notice to appear issued under the Uniform Act Regulating Traffic shall be deemed a valid complaint if it is signed by a law enforcement officer. K.S.A. 1992 Supp. 22-2202(8) does not do away with the specific requirement set forth in 8-2108 that the citation be filed with a court having jurisdiction before it is deemed to be a lawful complaint for the purpose of prosecution. *Cf.* K.S.A. 12-4201 ("The prosecution for the violation of municipal ordinances shall be commenced by the filing of a complaint with the municipal court."); K.S.A. 22-2301(1) ("Unless otherwise provided by law, a prosecution shall be commenced by filing a complaint with a magistrate."); K.S.A. 22-2303(1)("In misdemeanor cases and traffic infraction cases a prosecution may be begun by filing an information in the district court").

Giving the words in K.S.A. 21-3825(d) their ordinary meaning, a majority of this court is satisfied the legislature intended, and an ordinary reasonable person reading K.S.A. 21-3825(d) would conclude the statute requires, that the prosecution formally be

commenced by a complaint being filed in a court having jurisdiction before "any other act in the course of a prosecution can occur."

Thus, the trial court was correct in dismissing the felony because no act occurred after the complaint was filed that would be a violation of K.S.A. 21-3825(d).

Having so held, the remaining issue is moot.

Affirmed.

SIX, J., dissenting: At the preliminary hearing, Jacobs testified that he was not familiar with the two traffic tickets in question. Jacobs said that he knew Donlay. He also indicated that the signature at the bottom of the citations was not his and that he never received the tickets. Jacobs stated that he first became aware of the tickets when he received a letter in the mail saying that there was a warrant for his arrest.

Trooper Mayfield testified that he had issued the two citations to an individual he had assumed was Jacobs. He identified Donlay in the courtroom as the person to whom he had actually issued the tickets. Mayfield testified that Donlay admitted he had signed the tickets using Jacobs' name.

The State contends that the basis for the charge was Donlay's act of signing Jacobs' name on the two traffic tickets. According to the State, Donlay falsely represented himself as Jacobs when he gave Mayfield Jacobs' name and driver's license. The State reasons: "In the course of the trooper giving the two (2) tickets to the Defendant, the Defendant committed another act of deception by signing and accepting the two (2) tickets as Matthew J. Jacobs. By the Defendant signing the two (2) tickets, he made Matthew J. Jacobs liable for whatever actions could arise from the prosecution of these traffic offenses. Mr. Jacobs may be liable for the payment of the fine and costs of the traffic tickets, may have his license suspended for not paying the fine and costs, and may be arrested for not appearing in court." The State believes Donlay was trying to avoid both liability for the tickets and being arrested for operating a vehicle while his license was suspended. I agree.

The gist of the offense under K.S.A. 21-3825(d) is the actual or potential harm caused to the person impersonated. See *State v. Banks,* 14 Kan. App. 2d 393, 394, 790 P.2d 962 (1990).

The use of either K.S.A. 8-260(a)(3) or K.S.A. 21-3825(d), as authority for the prosecutor charging Donlay, is at issue in the case at bar. The better view is that the legislature intended a lesser punishment for the simple misuse of a license (K.S.A. 8-260) rather than in the instant situation (where the use produces negative results for a third party as required under the aggravated false impersonation statute, K.S.A. 21-3825[d]). The State acted within its discretion when it charged Donlay under K.S.A. 21-3825(d).

Under K.S.A. 8-2108, a citation is deemed a lawful complaint for the purpose of prosecution when filed. However, K.S.A. 1992 Supp. 22-2202(8) indicates:

" 'Complaint' means a written statement under oath of the essential facts constituting a crime, except that a citation or notice to appear issued by a law enforcement officer pursuant to and in compliance with K.S.A. 8-2106 and amendments thereto or a citation or notice to appear issued pursuant to and in compliance with K.S.A. 1992 Supp. 32-1049 shall be deemed a valid complaint if it is signed by the law enforcement officer."

K.S.A. 21-3825(d) prohibits: "[d]oing any other act *in the course* of a suit, proceeding or prosecution." The term "in the course of" used in the context of a criminal charge may be broadly construed to include the event of criminal impersonation giving rise to and connected with a prosecution.

I disagree with the majority's interpretation of K.S.A. 21-3825(d). Reason suggests that the impersonation which placed Jacobs at risk constitutes impersonation in the course of a prosecution. The majority's interpretation of K.S.A. 21-3825(d) has narrowed application of that statute to the point of questionable viability. To what set of circumstances does it now apply? Jacobs, who has been impersonated by Donlay, is summoned to court, not Donlay. What impersonating will Donlay do of Jacobs after the complaint is filed in court? Jacobs is the person the State is looking for. Donlay, in his initial performance as Jacobs, successfully eluded the trooper. Realistically, Donlay playing Jacobs will not seek a return engagement.

I acknowledge the concept of strict construction in favor of the accused; however, the facts in the case at bar fit the criminal

misconduct K.S.A. 21-3825(d) was designed to address. The legislature did not intend the result reached by the majority.

LOCKETT and DAVIS, JJ., join the foregoing dissenting opinion.