(979 P.2d 144)

No. 78,289

SCHOLFIELD AUTO PLAZA, L.L.C., *Appellee*, v. CARGANZA, INC., *Appellant*.

Opinion filed April 30, 1999.

*Fred A. Johnson*, of Busch & Johnson, of Wichita, for appellant.

*Christopher A. McElgunn*, of Klenda, Mitchell, Austerman & Zuercher, L.L.C., of Wichita, for appellee.

Before MARQUARDT, P.J., RULON, J., and WAHL, S.J.

RULON, J.: Defendant Carganza, Inc., appeals from the district court's issuance of a permanent injunction precluding defendant's

misappropriation and infringement of a servicemark known as "Carganza." We affirm.

The essential underlying facts are undisputed and as follows:

In 1992, plaintiff Scholfield Auto Plaza, L.L.C., and several other used car dealers began a combined monthly sale of used cars. The dealers took their used car inventory to Century II Expo Hall in Wichita, where financing and trade-ins were available. In November 1993, plaintiff named the sale "Carganza."

Defendant was incorporated in September 1991 as "Creditcars, Inc." to sell used cars and engage in "any other lawful . . . activity." Defendant eventually changed its name to "Old Town Auto, Inc.," then during 1996 changed its name to "Carganza, Inc." "Carganza, Inc." was the name of a complex that would include various car-related services, including a used car dealership. On January 29, 1996, defendant registered the term "Carganza, Inc." as a servicemark with the State of Kansas.

Ultimately, plaintiff filed a petition for permanent injunction, temporary injunction, and temporary restraining order against defendant. After a bench trial, the district court entered judgment for plaintiff on its claims of unfair competition and violation of § 43(a) of the Lanham Act (15 U.S.C. § 1125[c] [Supp. III 1997]). The district court issued a permanent injunction against defendant's use of the term "Carganza."

Resolution of this case requires interpretation of the Lanham Act. The court's interpretation of a statute is a question of law over which appellate review is unlimited. See *State v. Donlay*, 253 Kan. 132, 133-34, 853 P.2d 680 (1993).

Section 43(a) of the Lanham Act creates a federal cause of action for infringement of unregistered marks. 15 U.S.C. § 1125(a)(1)(A) (1994). The common-law tort of unfair competition allows a similar cause of action to prevent confusion between parties' products. To prevail under either theory, plaintiff must prove (1) it owns a valid, protectable servicemark and (2) defendant's service is so similar to plaintiff's it is likely to cause consumer confusion. See *Primedia Intertec Corp. v. Technology Marketing Corp.*, 35 F. Supp. 2d 809 (D. Kan. 1998). The Lanham Act authorizes courts to grant in-

junctions "according to the principles of equity." 15 U.S.C. § 1116(a) (1994).

The parties agree plaintiff used the term "Carganza" before defendant used the term "Carganza, Inc." Although plaintiff did not register "Carganza," section 43(a) of the Lanham Act protects qualifying unregistered trademarks. Servicemarks are registered the same way as trademarks under § 3 of the Lanham Act. 15 U.S.C. § 1053 (1994). The term "mark" encompasses both servicemarks and trademarks. If "Carganza" is a registrable servicemark under § 3 of the Lanham Act, such term may receive protection under § 43(a). To determine whether an unregistered mark is entitled to protection under § 43(a), the court looks at the general principles qualifying a mark for registration under § 2 of the Lanham Act, 15 U.S.C. § 1052 (1994 & Supp. III 1997). *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 120 L. Ed. 2d 615, 112 S. Ct. 2753, *reh. denied* 505 U.S. 1244 (1992).

A servicemark is "any word, name, symbol, or device, or any combination thereof . . . used by a person . . . to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown." 15 U.S.C. § 1127 (1994). The Lanham Act does not define what is a service. Defendant asserts "Carganza" does not qualify as a servicemark because such term simply denotes advertisement of the sale of goods. Unfortunately, the district court did not address this issue.

Defendant relies heavily on *In re Dr. Pepper Co.*, 836 F.2d 508, 509 (Fed. Cir. 1987), where the court held "the rendering of a service which is normally 'expected or routine' in connection with the sale of one's own goods is not a registrable service." The difference lies between services that are mandatory or common in promoting the sale of the type of merchandise and services which are not so mandatory or common. *Dr. Pepper*, 836 F.2d at 511. Plaintiff argues its use of the term "Carganza" denoted a separate service different from its everyday operation of selling used cars.

Plaintiff's use of "Carganza" is not merely an advertisement but is the name of the event held at Century II. We are convinced that even using defendant's *Dr. Pepper* analysis, plaintiff's "Carganza"

does qualify as a service. Taking used cars from a number of dealerships to a central indoor area, with trade-ins and financing approval available, is not a routine and ordinary activity in the sale of used cars.

Unquestionably, the purpose of the Lanham Act is to " 'secure to the owner of the mark the goodwill of [a] business [use] and to protect the ability of consumers to distinguish among competing producers.' " *Two Pesos*, 505 U.S. at 774 (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 198, 83 L. Ed. 2d 582, 105 S. Ct. 658 [1985]). "The Lanham Act [is further] intended to make 'actionable the deceptive and misleading use of marks' and 'to protect persons engaged in . . . commerce against unfair competition.' " *Two Pesos*, 505 U.S. at 767-68. We conclude the intent of the Lanham Act is upheld by finding "Carganza" is a servicemark.

After concluding "Carganza" is a servicemark, this court must next determine how such servicemark is classified. Marks are classified in five categories: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. *Two Pesos*, 505 U.S. at 768. Generic marks refer to the genus of which the particular product is a species and are not registrable as trademarks. *Two Pesos*, 505 U.S. at 768. Arbitrary and fanciful marks have no relationship to the produce or service with which they are associated; such marks are inherently distinctive and registrable with no further showing requirement. *Two Pesos*, 505 U.S. at 768; *Primedia*, 35 F. Supp. 2d at 815. "Carganza" is not a generic, arbitrary, or fanciful mark. Plaintiff's use of "Carganza" is either a descriptive mark or a suggestive mark. Descriptive marks are registrable upon a showing of secondary meaning, while suggestive marks are registrable without any further showing. Here, the district court found "Carganza" was a suggestive mark. We agree.

Defendant contends plaintiff's use of "Carganza" is a descriptive mark, because it describes a large car sales event. A descriptive mark conveys an immediate idea of the ingredients, qualities, or characteristics of the services. See *Primedia*, 35 F. Supp. 2d at 816. A descriptive mark may be protected by the Lanham Act if such mark has become distinctive of the applicant's goods in commerce.

*Two Pesos*, 505 U.S. at 769. A descriptive mark is distinctive if it (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning. *Two Pesos*, 505 U.S. at 769.

We conclude "Carganza" is not a descriptive mark. If so, such term would convey the same meaning in defendant's use as in plaintiff's use of the term. As we understand, defendant does not claim "Carganza" denotes a large car sales event when used by defendant. "Carganza" does not convey an immediate idea of the characteristics of the indoor, multi-dealer car sale. Consequently, plaintiff is not required to prove any secondary meaning.

Suggestive marks require imagination, thought, and perception to reach a conclusion as to the nature of the service. See *Primedia*, 35 F. Supp. 2d at 815. Suggestive marks are inherently distinctive and are entitled to protection, because their intrinsic nature serves to identify a particular source of a service. See *Two Pesos*, 505 U.S. at 768.

Two tests are commonly used to determine whether a mark is suggestive. The imagination test focuses on the amount of imagination required for a consumer to associate a given mark with the services it identifies. If a consumer must use more than token imagination to make the association, the mark is suggestive and not descriptive. *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1218 (9th Cir. 1987). Although "Carganza" combines the normal words "car" and "extravaganza," the fact "Carganza" is a large used car sale is not readily apparent. The consumer must use more than token imagination to make the association, making "Carganza" a suggestive mark.

The need test focuses on the extent to which a mark is actually needed by competitors to identify their services. *Union Carbide Corp. v. Ever-ready, Inc.*, 531 F.2d 366, 379 (7th Cir.), *cert. denied* 429 U.S. 830 (1976). Competitors in the business of selling used cars would never need the term "Carganza" to identify their goods or services. Under the need test, plaintiff's use of "Carganza" was a suggestive mark. The district court did not err in finding "Carganza" was a suggestive servicemark, requiring no evidence of secondary meaning to be protectable under the Lanham Act.

After proving registrability under the Lanham Act, § 43(a) requires plaintiff to further prove defendant's use of "Carganza, Inc." created a likelihood of confusion with plaintiff's use of "Carganza." See *Two Pesos*, 505 U.S. at 769. Here, the district court found defendant's use of the term "Carganza" presented the likelihood. of confusion.

The *Primedia* court set forth a list of nonexclusive factors to determine whether the use of a mark creates a likelihood of confusion. A reviewing court considers (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting its mark; (3) the relation in use and the manner of marketing between the goods or services marketed by the competing parties; (4) the degree of care likely to be exercised by purchasers; (5) evidence of actual confusion; and (6) the strength or weakness of the marks. *Primedia*, 35 F. Supp. 2d at 818. Likelihood of confusion is a question of fact this court reviews under the clearly erroneous standard. *Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1484 (10th Cir. 1987).

To evaluate the similarity between the use of marks, a court must consider the overall impression given by the servicemark. *Fotomat Corp. v. Cochran*, 437 F. Supp. 1231, 1243 (D. Kan. 1977). The degree of similarity between marks is tested on three levels: sight, sound, and meaning. In evaluating similarity, the court determines whether the alleged infringing mark will be confusing to the public when singly presented. *Universal Money Centers, Inc. v. American Tel. & Tel. Co.*, 22 F.3d 1527, 1530-31 (10th Cir.), *cert. denied* 513 U.S. 1052 (1994).

"Carganza, Inc." and "Carganza" are the same term, creating a likelihood of confusion. See *Cullman Ventures, Inc. v. Columbian Art Works, Inc.*, 717 F. Supp. 96, 127 (S.D.N.Y. 1989) (where marks are virtually identical, consumer confusion is inevitable). Further, plaintiff and defendant are both associated with the sale of used cars, adding to the likelihood of confusion. This record contains evidence of actual confusion by consumers who asked plaintiff and defendant if "Carganza" and "Carganza, Inc." were related. Defendant does not dispute the district court's finding that

it used the term "Carganza, Inc." with the intent to capitalize on plaintiff's advertising.

We are satisfied the district court did not err in finding defendant's use of "Carganza, Inc." presented a likelihood of confusion with plaintiff's use of "Carganza." Because "Carganza" is a protected servicemark and there is a likelihood of confusion, the district court did not err in issuing a permanent injunction against defendant's use of the term "Carganza, Inc."

Affirmed.